IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK STEVEN SCHILLER,

       Plaintiff,

   vs.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

       Defendant.

Case No. 1:12-cv-00771-AA
OPINION AND ORDER

---

Tim Wilborn
Wilborn Law Offices, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Jeffrey R. McClain
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

PAGE 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Mark Schiller brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner denying his application for Title XVI supplemental security income ("SSI") benefits. For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## PROCEDURAL BACKGROUND

On September 24, 2008, plaintiff protectively filed an application for SSI. Tr. 162-65. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 40-43. On August 3, 2010, an ALJ hearing was held before the Honorable John J. Madden; plaintiff was represented by counsel and testified therein, as did a vocational expert ("VE"). Tr. 47-109. On September 20, 2010, ALJ Madden issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 18-27. After the Appeals Council declined to review the ALJ's decision, plaintiff filed a complaint in this Court. Tr. 1-6.

## STATEMENT OF THE FACTS

Born on February 3, 1960, plaintiff was 48 years old on the alleged onset date of disability[1] and 50 years old at the time of

---

[1] Plaintiff initially alleged an onset date of September 1, 1999. Tr. 162. Because the earliest an SSI claimant can obtain benefits is the month after which he filed his application, at the hearing plaintiff amended his alleged onset date to September 24, 2008, the protective filing date. Tr. 52-53; see also 20 C.F.R. § 416.335.

PAGE 2 - OPINION AND ORDER

the hearing. Tr. 26, 162. Plaintiff dropped out of high school in the eleventh grade but later earned a GED. Tr. 26, 177. He previously worked as an iron worker and construction laborer. Tr. 174. Plaintiff alleges disability beginning September 24, 2008 due primarily to a bipolar disorder, as well as neck and knee pain. Tr. 70, 76, 78, 173.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential

PAGE 3 - OPINION AND ORDER

process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c).  If not, the claimant is not disabled.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work."  20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled.  If he cannot perform past relevant work, the burden shifts to the Commissioner.  At step five, the Commissioner must establish that the claimant can perform other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e) & (f).  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process

PAGE 4 - OPINION AND ORDER

outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 20. At step two, the ALJ determined that plaintiff had the severe impairment of "mild degenerative disc disease of the cervical spine." Id. At step three, the ALJ found that plaintiff's impairment did not meet or equal the requirements of a listed impairment. Tr. 21.

Because plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. Id.

At step four, the ALJ found that plaintiff had no past relevant work. Tr. 26. Finally, at step five, the ALJ determined, based on the VE's testimony, that a significant number of jobs existed in the local and national economy that plaintiff could perform despite his impairments, such as leather products decorator, small products assembler II, and electrical accessories assembler. Tr. 26-27. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Tr. 27.

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) not finding severe mental limitations at step two; (2) improperly evaluating the medical evidence; (3) rejecting the lay testimony; and (4) failing to include all of his limitations in the RFC, such that the VE's testimony and step finding were invalid.

PAGE 5 - OPINION AND ORDER

I.    Step Two Finding

Plaintiff first asserts that the ALJ erred by failing to find his mental impairments, including a bipolar disorder, severe at step two of the five-step sequential process. See Pl.'s Opening Br. 10. Plaintiff contends that these mental impairments, as assessed by Robin Rose, M.D., Frank Colistro, Ed.D., and Thomas Shields, Ph.D., severely limit his ability to function in the workplace. Id. at 10-12.

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. §§ 416.920(a), 416.920a. An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." 20 C.F.R. § 416.921(a). The step two inquiry is a "threshold inquiry." Yuckert, 482 U.S. at 153. As such, "[o]missions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." Harrison v. Astrue, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)).

The "effect of this harmless error doctrine is tempered by additional requirements," however, when a claimant asserts disability due to mental impairments. Id. In that case, the ALJ is required to "document application of the [Psychiatric Review Technique] in the decision," which entails: (1) "determin[ing] whether an applicant has a medically determinable mental impairment"; (2) "rat[ing] the degree of functional limitation for

PAGE 6 - OPINION AND ORDER

four functional areas"; and (3) "determin[ing] the severity of the mental impairment (in part based on the degree of functional limitation). Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011) (citation and internal quotations omitted)); see also Dykstra v. Barnhart, 94 Fed.App. 449, 450 (9th Cir. 2004); 20 C.F.R. § 416.920a. Accordingly, the ALJ's written opinion must "incorporate the pertinent findings and conclusions based on the technique" and "include a specific finding as to the degree of limitation in each of the functional areas." Keyser, 648 F.3d at 725 (citations and internal quotations omitted). Pursuant to this analysis, the ALJ "must [also] show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 416.920a(e).

Failure to document the application of the technique in the opinion "requires reversal if the plaintiff had a 'colorable claim of a mental impairment.'" Dykstra, 94 Fed.App. at 450 (citing Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000)); see also Keyser, 648 F.3d at 726. A colorable claim "is one which is not 'wholly insubstantial, immaterial, or frivolous.'" Dykstra, 94 Fed.App. at 450 (quoting McBride Cotton & Cattle Corp. v. Veneman, 290 F.3d 973, 981 (9th Cir. 2002)); see also Keyser, 648 F.3d at 726-27.

Here, the ALJ did not follow the proper procedure. Specifically, the ALJ failed to discuss the examination, laboratory findings, and alleged functional limitations that were

PAGE 7 - OPINION AND ORDER

considered in reaching his conclusion that plaintiff's alleged mental impairments resulted in no more than "mild" limitations and therefore were non-severe. Rather, the ALJ merely reiterated the State psychiatric medical consultant's conclusions, which constituted check marks on the PRTF, without discussing or analyzing any of the other evidence of record. Tr. 21 (citing Tr. 285-97). As such, in evaluating step two, the ALJ ignored, without explanation, the determinations of plaintiff's examining doctors,[2] as well as the testimony of plaintiff and his lay witnesses, in favor of a cursory report prepared by a consulting source. See Tr. 20-21. This is inadequate for the purposes of 20 C.F.R. § 416.920a, especially in light of the fact that the record before the ALJ included additional evidence regarding plaintiff's mental impairments that emerged after the PRTF was completed. See Warren v. Astrue, 2012 WL 864543, *4-7 (D.Or. Mar. 13, 2012) (reversing the ALJ's step two finding under analogous circumstances) (citing Keyser, 648 F.3d at 726).

Further, pursuant to this analysis, the ALJ mis-characterized the record. For instance, the ALJ stated that "no treating or examining source has observed any clinical evidence in support of

---

[2] Outside of the State agency consulting sources, the only medical evidence pertaining to plaintiff's mental impairments is from examining sources. This is because plaintiff was incarcerated from 2000 through 2008, during which time the treating mental health records that preceded his incarceration were purged. Tr. 275. Furthermore, plaintiff's prison records do not contain any "mental health information" and he has been unable to receive regular mental health treatment after being released due to a lack of resources and/or health insurance. Tr. 276-77, 72-75.

PAGE 8 - OPINION AND ORDER

bipolar disorder or any other mental impairment." Tr. 23-24. The record, however, reveals the contrary. Plaintiff's examining medical sources have repeatedly diagnosed him with a bipolar and/or other mental disorders based on their observations and objective medical evaluations. Tr. 8-12 (Dr. Alvord), 278-83 (Dr. Shields), 310-18 (Dr. Rose), 320-29 (Dr. Colistro). In addition, plaintiff consistently endorsed mental symptoms that would significantly limit his ability to function in the workplace. See, e.g., Tr. 279 (describing oscillating between being "markedly agitated with angry outbursts" and "depressed and [unable to] get out of bed"), 311 (reporting his cyclical "mania," during which he self-isolates, "say[s] stuff which is mean," and cannot remember or control some of his actions); see also Tr. 70-72, 76-77 (hearing testimony regarding his mood lability, crying spells, delusions, etc.).

Based on plaintiff's statements, as well as their own clinical observations and objective examinations, plaintiff's treating sources opined that he experienced a wide-range of concrete restrictions associated with his mental impairments. See Tr. 8-12, 278-83, 310-18, 320-29. The third-party statements from Misty Cruz, Edward King, and Mark Schiller, Jr. are congruous with plaintiff's testimony and the reports of Drs. Rose, Shields, and Colistro. Tr. 89-100, 193-200. Therefore, even if the ALJ properly discredited plaintiff's testimony, the third-party statements, and the medical evidence, his summation of plaintiff's mental state was nonetheless an inaccurate representation of the record.

PAGE 9 - OPINION AND ORDER

Evidence submitted to the Appeals Council after the ALJ rendered his decision further indicates that plaintiff's bipolar disorder limits his ability to function in the workplace. On November 24, 2011, Scott Alvord, Psy.D., performed a psychological evaluation on plaintiff; the ALJ did not weigh or assess this report. See Tr. 1-12, 18-31. Based on clinical observations, a comprehensive medical and mental history, and a mental status exam, Dr. Alvord diagnosed plaintiff with a bipolar disorder and an anxiety disorder, with a Global Assessment Functioning ("GAF") score of 40-45. Id. Dr. Alvord concluded that "I do not believe Mr. Schiller will function in an occupational setting." Tr. 12. Dr. Alvord's assessment is largely consistent with those of Drs. Colistro, Rose, and Schields. Compare Tr. 8-12, with Tr. 278-83, 310-18, 320-29.

Thus, the evidence of record, including plaintiff's testimony, the third-party statements, and plaintiff's medical records, reveals that plaintiff suffered from a bipolar disorder and corresponding functional limitations. In other words, the ALJ's step two finding to the contrary was not based on substantial evidence. Regardless, even assuming that the ALJ properly concluded that plaintiff's mental impairments were non-severe, there is no indiction that the ALJ "considered the effect of the impairment omitted at step two" when formulating plaintiff's RFC. Harrison, 2011 WL 2619504 at *7. The Court acknowledges, however, that plaintiff's allegedly disabling condition is especially difficult to evaluate in the case at bar due to the cyclical nature

of his disorder and his period of incarceration, during which medical records from his treating sources were purged. Nevertheless, rather than merely ignoring plaintiff's evidence of a bipolar disorder and its impact on his ability to work, the ALJ should have developed the record more fully and fairly by obtaining testimony from a medical expert.

In sum, the ALJ's failure to follow 20 C.F.R. § 416.920a was not harmless because plaintiff demonstrated a colorable claim of mental impairment. See Keyser, 648 F.3d at 726-27 (colorable claim of mental impairment existed where claimant had a GAF score of 55 to 65 and third-party statements indicated that the claimant's mental impairments adversely impacted her ability to maintain employment); see also Warren, 2012 WL 864543 at *4-7. The ALJ's failure to properly analyze plaintiff's mental impairments at step two may have also resulted in errors at subsequent steps of the disability analysis. See 20 C.F.R. § 416.920 (listing five-step evaluation process). For instance, the ALJ utilized plaintiff's subjective reports regarding these impairments, in part, as a means of discrediting his testimony and the medical opinion evidence. Tr. 22-25.

Accordingly, this Court declines to address plaintiff's other allegations of error, as they primarily relate to how the ALJ's failure to consider his mental impairments at step two adversely effected the RFC determination and step five of the sequential process. Therefore, on remand, the ALJ must evaluate plaintiff's mental impairment using the procedures set out at 20 C.F.R. §

PAGE 11 - OPINION AND ORDER

416.920a and perform the subsequent steps of the analytical process in light of this new evaluation, including obtaining testimony from a medical expert.  <u>See</u> <u>Keyser</u>, 648 F.3d at 726-27 (remand for further proceedings is the appropriate remedy where the ALJ fails to adequately assess a colorable claim of mental impairment at step two).

**CONCLUSION**

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.
Dated this 23RD day of July 2013.


_____
Ann Aiken
United States District Judge

PAGE 12 - OPINION AND ORDER